IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



ANTONIO JACKSON,

    Petitioner,

v.                                             Criminal No. 2:17-cr-13

UNITED STATES OF AMERICA,

    Respondent.

## *MEMORANDUM OPINION & ORDER*

Before the Court is Antonio Jackson's ("Petitioner") motion requesting compassionate release pursuant to 18 U.S.C. § 3582(c). ECF No. 42. The Government opposed the motion and Petitioner replied. ECF Nos. 47, 52. This matter is now ripe for judicial determination. For the reasons below, the Petitioner's motion is **DENIED**.

## I. FACTUAL AND PROCEDURAL HISTORY

On February 8, 2017, Petitioner was named in a one-count Criminal Information charging Conspiracy to Distribute and Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. 846, 841(a)(1) and (b)(1)(A)(ii). ECF No. 14. On February 13, 2017, Petitioner pleaded guilty to Count One of the Criminal Information. ECF Nos. 17, 18. According to his Presentencing Report ("PSR"), Petitioner conspired to sell cocaine from in or about October 2012 up to and including December 8, 2016. ECF No. 36 at ¶ 6. In all, Petitioner was attributed with 18.730275 kilograms of cocaine, 368.55 grams of heroin and 56.7 grams of fentanyl. *Id.* at ¶ 9. In his PSR, Petitioner reported that he was diagnosed with Type II Diabetes and high blood pressure in 2015 when he was treated at Sentara Leigh Hospital in Norfolk, Virginia. *Id.* at ¶ 61. Petitioner was assessed a total offense level of 34 and criminal history category VI. *Id.* at ¶ 83-84. On May 18, 2017, the Court imposed a sentence of 152 months imprisonment followed by five (5) years supervised

release. ECF No. 34. Petitioner's current projected release date is September 25, 2027 and he is currently incarcerated at FCI Petersburg Low, a low-level security federal prison in Virginia.

On September 22, 2020, Petitioner filed his *pro se* motion for compassionate release. ECF No. 37. October 28, 2020, Petitioner filed the motion through counsel. ECF No. 42. The Government opposed the motion and Petitioner replied. ECF Nos. 47, 52.

Petitioner requests compassionate release because of the ongoing COVID-19 pandemic and argues that his underlying health condition places him at a higher risk for serious illness if he contracts the virus *again*. ECF Nos. 37, 42. At age 41, Petitioner claims that he has significant medical problems including Type II diabetes, hypertension, and obesity which make him particularly susceptible to COVID-19 and is more likely to suffer dire consequences from the virus. *Id.* Notably, in August 2020, Petitioner contracted COVID-19 at FCI Petersburg Low, along with over one hundred other inmates. *Id.* at 4. While incarcerated at FCI Petersburg Low Petitioner has completed various education courses, including drug abuse and education programs. *Id.* at Exhibit 2. Accordingly, Petitioner requests that this Court grant him compassionate release and allow him to begin supervised release while living with his daughter in Newport News, VA.

## II. LEGAL STANDARD

### A. The Exhaustion Requirement

A petitioner may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court. *Id.* However, the exhaustion

requirement may be waived under the following circumstances: (1) the relief sought would be futile upon exhaustion; (2) exhaustion via the agency review process would result in inadequate relief; or (3) pursuit of agency review would subject the petitioner to undue prejudice. *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020) *citing Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). The COVID-19 pandemic, which could result in catastrophic health consequences for petitioners vulnerable to infection, implicates all three exceptions justifying the waiver of the exhaustion requirement. *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *United States v. Zukerman*, 2020 WL 1659880, at *3 (S.D.N.Y. April 3, 2020); *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *United States v. Gonzalez*, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020).

**B. The Compassionate Release Standard**

As amended by the FIRST STEP Act, a court may modify a term of imprisonment on the motion of the petitioner after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). "Extraordinary and compelling reasons" was previously defined by the United States Sentencing Commission ("Sentencing Commission") in U.S.S.G. § 1B1.13, Application Note 1. Before the passage of the FIRST STEP Act, the Sentencing Commission provided that a sentence may be modified due to the petitioner's medical condition, age, or family circumstances and further defined the limits under which a sentence reduction may be given under those justifications. U.S.S.G. § 1B1.13, n. 1 (A)–(C). The Sentencing Commission also provided a "catch-all provision" that allowed for a sentence modification upon a showing of "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* at n. 1 (D). Use of the "catch-all provision" prior to the FIRST STEP Act was

severely restricted because it required approval from the BOP before an individual could petition the district court for relief. *Id.*

However, U.S.S.G. § 1B1.13 is now outdated following the passage of the FIRST STEP Act, which allows individuals to petition the district court directly without clearance from the BOP. As such, U.S.S.G. § 1B1.13 is merely advisory and does not bind the Court's application of § 3582(c)(1)(A). *McCoy v. United States*, 2020 WL 2738225, at *4 (E.D. Va. May 26, 2020); *see also United States v. Lisi*, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) ("[T]he Court may independently evaluate whether [petitioner] has raised an extraordinary and compelling reason for compassionate release ... [but § 1B1.13's policy statement] remain[s] as helpful guidance to courts...."); *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019) ("[T]he Commission's existing policy statement provides helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive"). A petitioner's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). In sum, the Court may consider a combination of factors, including but not limited to those listed in U.S.S.G. § 1B1.13, in evaluating a petitioner's request for a sentence modification under 18 U.S.C. § 3582(c)(1)(A)(i).

### III. DISCUSSION

#### A. The Exhaustion Requirement

The Court finds that although Petitioner did not exhaust his administrative remedies prior to bringing his motion with the Court, this requirement is waived. On October 6, 2020, Petitioner submitted a request for compassionate release to the Warden of FCI Petersburg Low *after* he filed his *pro se* motion for compassionate release. ECF No. 47 at Exhibit 6. While the Warden of FCI Petersburg Low has not responded, the Court need not wait to adjudicate this matter. *See, United*

4

*States v. Robinson*, No. 3:10cr261, ECF No. 86 at 8 (E.D. Va. July 17, 2020) (finding exhaustion requirement where BOP issued denial within 30 days because "an inmate need not 'exhaust' administrative remedies if the motion is filed in court 30 days after receipt of a request by the warden.") (quoting *United States v. Smith*, No. 2:18cr96, ECF No. 37 at 12, n.5 (E.D. Va. Apr. 17, 2020)). Moreover, this Court, consistent with its previous opinions, waives the exhaustion requirement given the COVID-19 pandemic and the catastrophic health consequences it has for inmates with underlying health conditions. *See United States v. Poulios*, N. 2:09-cr-109, 2020 WL 1922775, at *1 (E.D. Va. April 21, 2020); *United States v. Casey*, No. 4:18-cr-4, 2020 WL 2297184, at *2 (E.D. Va. May 6, 2020); *Miller v. United States*, 2020 WL 1814084, at *2 (E.D. Mich. Apr. 9, 2020); *Zukerman*, 2020 WL 1659880, at *3; *United States v. Perez*, 2020 WL 1456422, at *3–4 (S.D.N.Y. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *2. Accordingly, the Court waives the exhaustion requirement here.

### B. Petitioner's Compassionate Release Request

The Court now turns to whether Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the grave risk COVID-19 poses to individuals with underlying health conditions. During the COVID-19 pandemic, federal courts around the country have found that compassionate release is justified under the circumstances. *Zukerman*, 2020 WL 1659880, at *4 *citing Perez*, 2020 WL 1546422, at *4; *United States v. Colvin*, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020); *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020); *United States v. Jepsen*, No. 3:19-CV-00073 (VLB), 2020 WL 1640232, at *5 (D. Conn. Apr. 1, 2020); *Gonzalez*, 2020 WL 1536155, at *3; *United States v. Muniz*, No. 4:09-CR-0199-1, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30, 2020); *United States v. Campagna*, No. 16 CR. 78-01 (LGS), 2020 WL 1489829, at *3 (S.D.N.Y. Mar. 27, 2020).

Unlike the above cases, Petitioner's compassionate release is not justified under the circumstances.

First, Petitioner does not show a potential susceptibility to health risks due to COVID-19 because of his underlying conditions. In his motion, Petitioner argues that his Type II diabetes, hypertension, and obesity place him at an increased risk of severe illness or death should he contact COVID-19 again. ECF Nos. 42, 52. According to the Centers for Disease Control and Prevention ("CDC"), individuals with obesity (BMI of 30 or higher) and Type II diabetes are at an increased risk for severe illness from COVID-19.[1] Individuals with hypertension, high blood pressure (exacerbated by high cholesterol), and who are overweight (BMI of 25-30) might be at an increased risk for severe illness if they contract the virus.[2] Unlike other cases, the Court here does not need to speculate as to what impact COVID-19 would have on Petitioner's health should he contract COVID-19 because Petitioner already did contract COVID-19 on August 26, 2020. *Id.* Petitioner has now recovered from COVID-19 and BOP records indicate that during a recent medical evaluation on October 22, 2020, he showed no signs of respiratory distress and was cleared after auscultation. ECF No. 47 at Exhibit 2 (filed under seal); *see* ECF No. 49. Moreover, his medical records showed that Petitioner's underlying conditions were controlled. On his October 22nd medical evaluation, Petitioner no longer reported chills, fever, fatigue, night sweats, unexplained weight loss, or weakness. *Id.* Moreover, Petitioner's heart and respiratory health were reported as normal. Although Petitioner argues that his health is still at risk should he contract COVID-19 again, the Court finds that Petitioner has not presented evidence supporting this claim.

Second, however, Petitioner does show a potential risk of contracting the disease at his prison facility. Most critically, Petitioner already contracted COVID-19 at FCI Petersburg Low on

---

[1] Centers for Disease Control and Prevention, "People Who are at Higher Risk," *CDC.gov*, available at https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html
[2] *Id.*

6

August 26, 2020 along with over a hundred other inmates. As of November 20, 2020, the BOP has reported a total of 143 (0 current, and 143 recovered) positive cases of COVID-19 for inmates and 20 (0 current) for Staff at FCI Petersburg Low.[3] Moreover, increased testing is showing that COVID-19 has rapidly spread throughout prisons all over the country.[4] Despite the BOP's protection measures, individuals housed in prisons remain particularly vulnerable to infection. *See Muniz*, 2020 WL 1540325, at *1; *see also Esparza*, 2020 WL1696084, at *1 (noting that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others"). Therefore, the Court need not wait until an outbreak occurs at a specific prison facility to determine that a petitioner has a particularized risk of contracting the disease. *See Zukerman*, 2020 WL 1659880, at *6 *citing Rodriguez*, 2020 WL 1627331, at * 12 ("the Court did not intend for that sentence to include incurring a great and unforeseen risk of severe illness or death brought on by a global pandemic").

Third, the § 3553(a) factors do not weigh in favor of Petitioner's compassionate release. The seriousness of Petitioner's conduct for his underlying offense remain unchanged. According to his PSR, Petitioner was multikilogram dealer of cocaine and a large supplier of heroin in Hampton Roads, Virginia from 2012 and 2016. ECF No. 36 at ¶ 6. To date, Petitioner has served approximately 48 months of his 152-month sentence. Petitioner also has an extensive criminal record with his first offense at age seventeen. *Id.* at ¶¶ 25-26. As an adult, Petitioner was arrested for various crimes including drug possession and distribution. *Id.* at ¶¶ 29-39. Based on his criminal record and disciplinary infractions, the Court finds that Petitioner has a poor history of

---

[3] *See* Federal Bureau of Prisons, "COVID-19 Corona Virus," *BOP.gov*, https://www.bop.gov/coronavirus/
[4] *See* Centers for Disease Control and Prevention, "Coronavirus Disease 2019: Cases in the US," *CDC.gov*, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html

changing his behavior. On the other hand, since his incarceration, Petitioner has completed various educational courses and completed various drug abuse and education programs. ECF No. 42 at Exhibits 2 and 3. Moreover, although Petitioner has received several disciplinary infractions in the past while in BOP custody, he has not received disciplinary infractions in the past four years. ECF No. 46. Also, Petitioner has maintained contact with friends and family. ECF No. 42 at Exhibit 4.

Overall, while Petitioner has demonstrated some evidence of rehabilitation while in BOP custody, the § 3553(a) factors do not weigh in his favor. Most critically, Petitioner has not presented evidence showing that he suffers from an underlying health condition that places him at higher risk for severe illness if he contracts COVID-19. Therefore, based on the aforementioned factors, the Court finds that Petitioner does not qualify for compassionate release.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's motion is **DENIED**.

The Clerk is **DIRECTED** to send a copy of this Order to the Petitioner, the United States Attorney, the United States Probation Office, the Federal Bureau of Prisons, and the United States Marshals Service.

**IT IS SO ORDERED.**

Norfolk, Virginia
November 23, 2020

Raymond A. Jackson
United States District Judge